IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-00260-FL

| | | |
|---|---|---|
| HARVEY A. HAWLEY, | ) | |
| | ) | |
| Plaintiff/Claimant, | ) | |
| | ) | |
| | ) | **MEMORANDUM AND** |
| v. | ) | **RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-21, DE-23] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Harvey A. Hawley ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion [DE-25] and Defendant replied [DE-26]. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be denied, Defendant's Motion for Judgment on the Pleadings be granted, and the final decision of the Commissioner be upheld.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on March 8, 2010, alleging disability beginning July 11, 2003. (R. 179). His claim was denied initially and upon reconsideration. (R. 115, 124). A hearing before the Administrative Law Judge ("ALJ") was held on September 29, 2011, at which Claimant was represented by counsel and a vocational expert

("VE") appeared and testified. (R. 36-56). On October 17, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 21-35).[1] On January 3, 2012, the Appeals Council denied Claimant's request for review. (R. 7-9). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ

---

[1] Claimant previously filed an application for a period of disability and DIB, alleging disability beginning July 11, 2003, and was awarded benefits for a closed period beginning July 11, 2003 and ending May 2, 2006, but found Claimant not disabled for the period thereafter through October 9, 2009, the date of decision. (R. 62-75). Claimant did not appeal the unfavorable finding in the prior decision, and the ALJ only considered the period after May 2, 2006, with respect to the current application (R. 24, 39).

2

analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520, under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to pose a

3

hypothetical that adequately reflects Claimant's nonexertional limitations; (2) failure to give proper weight to a treating physician's medical opinion; (3) improper assessment of Claimant's credibility; and (4) improper assessment of Claimant's RFC. Pl.'s Mem. at 6-13 [DE-22].

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 26). Next, the ALJ determined Claimant had the following severe impairments: degenerative disk disease; a history of lumbar fusion; hypertension; asthma; a major depressive disorder; and a history of polysubstance dependence. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in activities of daily living, moderate restrictions in social functioning, and moderate difficulties in concentration, persistence and pace with no episodes of decompensation. (R. 27).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[2] with postural, environmental, and mental restrictions (e.g., no

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. § 404, Subpt. P, App. 2, Table 1. *Id.*

4

climbing or balancing, occasionally stoop, crouch, kneel, and crawl, no exposure to workplace hazards such as unprotected heights or dangerous machinery, no concentrated exposure to respiratory irritants such as dust, fumes, and smoke, limited to simple, routine, repetitive tasks, and only occasionally deal with coworkers, supervisors, and the public due to stress and anxiety). (R. 28). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 32). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a delivery truck driver. (R. 33-34). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 34-35).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 45 years old, unemployed, and living with his mother. (R. 41, 45). Claimant is a high school graduate. (R. 41). Claimant was last employed as a delivery truck driver in July 2003, where his duties included unloading pallets. *Id.* Claimant injured his back while attempting to move an overweight pallet with a manual pallet jack. *Id.* As a result of his injury, Claimant underwent two surgeries, but continues to experience a high level of pain. (R. 41-42).

Claimant testified that he is unable to work due to chronic low back pain. Claimant never has a pain free day and on a scale of one to ten, his average pain level is seven, at best is five, and at worst is ten "or worse." (R. 43). Claimant also experiences some pain in his shoulders and pain, tingling, and numbness in his legs and hip joints, but has not discussed his hip pain with a doctor. (R. 43-44). Claimant's pain causes sleeplessness, and he is awake approximately 75% of the night.

5

(R. 48). Despite Claimant's severe pain, he was not receiving treatment for pain at the time of hearing, because he had no income, health insurance, or medicaid assistance, and did not want to become addicted to pain medicine. (R. 42, 44, 53). Claimant could not see his primary care doctor, because his account was past due (R. 52); however, Claimant was receiving twice weekly treatment and medication from a free clinic for high blood pressure, depression, and substance abuse (R. 42, 44).

Claimant entered a drug treatment program in February 2010, related to his alcohol and prescription drug abuse.[3] (R. 53). Claimant attempts to deal with his pain on his own by laying on his side with a pillow between his knees and taking ibuprofen. (R. 48, 51). Claimant lacks energy and the ability to concentrate and focus due to pain, and has difficulty relating with others. (R. 50). Claimant suffers from mood swings and anxiety in addition to depression; the clinic was arranging for Claimant to see a psychiatrist. (R. 49-50).

Claimant estimates that he could stand for ten to fifteen minutes before needing to sit down, sit for twenty to thirty minutes before needing to stand, walk fifty to seventy-five yards before needing to rest, and lift or carry five to six pounds. (R. 48). Claimant also has difficulty reaching over head or holding his arms straight in front of his body. *Id.* Claimant maintains his living space and occasionally sits on a stool to wash dishes, and his mother does the laundry, cooking, and cleaning. (R. 46). Claimant's brother does the yard work, due to Claimant back problems and asthma. *Id.* Claimant's daily activities include watching television, sleeping, and going to the clinic twice a week. (R. 46-47). Claimant drives twenty minutes to his sister's house and she drives him another twenty-five minutes to the clinic. (R. 47). Claimant does not participate in any group

---

[3] Medical records also indicate that Claimant received treatment during this time for a crack cocaine addiction. (R. 294).

6

activities and does not lift or play with his grandchildren. (R. 47, 49).

## III.  Vocational Expert's Testimony at the Administrative Hearing

Paula Day testified as a VE at the administrative hearing. (R. 54-56). After the VE's testimony regarding Claimant's past work experience (R. 54), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed the following hypothetical:

> [A]ssuming the exertional capacity for sedentary work and that would be standing and walking up to two hours, sitting up to six hours in an eight-hour day, lifting, carrying, pushing and pulling ten pounds occasionally, five pounds frequently. Nonexertional limitations would include no balancing or climbing, no working at heights or around dangerous machinery, no working in environments with concentrated respiratory irritants, occasional stooping, crouching, kneeling and crawling, limited to performing simple routine repetitive tasks. By that, I mean the individual could apply common[] sense, understanding to carry out instructions furnished in written, oral or diagrammatic form and deal with problems involving several concrete variables and are from standardized situations and socially the individual would be limited to occasional contact with coworkers, supervisors and the public. I assume such an individual could not do the claimant's past relevant work?

(R. 55). The VE opined that such an individual could not perform Claimant's past relevant work, but could perform other work, such as document preparer (DOT # 249.587-018); addresser (DOT # 209.587-010); and surveillance system monitor (DOT # 379.367-010). (R. 55). The ALJ then modified the hypothetical so that the individual would not be able to sustain the concentration, persistence and pace to do simple routine repetitive tasks throughout the course of an eight-hour day, and the VE opined that the additional limitation would preclude all work. (R. 55-56).

## DISCUSSION

### I.  The ALJ's Hypothetical to the VE

Claimant contends that the ALJ erred in failing to convey Claimant's low mental functioning

7

and inability to deal with stress to the VE. Pl.'s Mem. at 6-7. "Questions posed to a VE should be based upon a consideration of all relevant record evidence, and fairly set out all of a claimant's impairments." *Mascio v. Colvin*, No. 2:11-CV-65-FL, 2013 WL 3321577, at *4 (E.D.N.C. July 1, 2013) (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)). "However, an ALJ 'has great latitude in posing hypothetical questions and is free to accept or reject suggested restrictions so long as there is substantial evidence to support the ultimate question.'" *Id.* (citing *Koonce v. Apfel*, 166 F.3d 1209, 1999 WL 7864, at *5 (4th Cir. Jan 11, 1999) (unpublished table decision)).

While Claimant correctly notes that Dr. Christopher Ricci found Claimant's cognitive functioning "low to borderline" and that Claimant was "having significant difficulties with stress," Dr. Ricci also concluded that Claimant "appears capable of following and understanding simple directions and instructions and performing simple tasks independently" and "appears capable of learning some new tasks and performing some complex tasks independently." (R. 353-54). The ALJ's hypothetical limited Claimant to performing "simple routine repetitive tasks," which the ALJ defined to mean "the individual could apply common[] sense, understanding to carry out instructions furnished in written, oral or diagrammatic form and deal with problems involving several concrete variables and are from standardized situations,"[4] and to have only occasional contact with coworkers,

---

[4] The Commissioner concedes that the ALJ associated "simple routine repetitive tasks," which is Level 2 reasoning, with the definition of Level 3 reasoning. Def.'s Reply at 4. Level 2 reasoning is characterized by the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles, App. C § III, 1991 WL 688702 (4th ed. rev. 1991). Level 3 reasoning is characterized by the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.* However, it is apparent that the ALJ believed Claimant capable of Level 3 reasoning, and this conclusion is supported by substantial evidence, including Dr. Ricci's opinion that Claimant "appears capable of learning some new tasks and performing some complex tasks independently." (R. 28, 354). Furthermore, as the Commissioner correctly points out, the occupation of "addresser" cited by the VE (R. 35, 55) requires only Level 2 functioning. *See* Dictionary of Occupational Titles, 209.587-010, Addresser, 1991 WL 671797 (4th ed. Rev. 1991). Accordingly, based on the facts and circumstances of this case, the ALJ's error was harmless.

8

supervisors and the public (R. 55). These restrictions sufficiently account for Claimant's limits on cognitive functioning and difficulties dealing with stress.

Contrary to Claimant's assertion, the ALJ was not required to inform the VE that Claimant's cognitive function was borderline, but needed only to appropriately describe Claimant's limitations as determined by the ALJ. *See Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 WL 4911794, at *5 (E.D.N.C. Nov. 14, 2008) ("The key to a valid hypothetical question posed to a VE is that 'it is the claimant's functional capacity, not his clinical impairments, that the ALJ must relate to the vocational expert.'") (quoting *Fisher v. Barnhart*, 181 Fed. App'x 359, 364 (4th Cir. 2006) (unpublished opinion)). Furthermore, the VE's response to the hypothetical specifically noted that the work such an individual could perform was unskilled. *Id.* Accordingly, the ALJ's hypothetical, and the VE's response thereto, appropriately accounted for the mental limitations determined by the ALJ.

## II.    The ALJ's Evaluation of Claimant's Treating Physician's Medical Opinion

The Claimant contends that the ALJ erred by failing to give controlling weight to the opinion of Claimant's treating physician Dr. Allen Smith and that the ALJ erred in failing to recontact Dr. Smith. Pl.'s Mem. 7-10. The ALJ must generally give more weight to the opinion of a treating physician because that doctor is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(c)(2). However, though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see also Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give

9

less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted); 20 C.F.R. § 404.1527(c)(3).

When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weigh the opinion pursuant to the following nonexclusive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005). Moreover, the ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ acknowledged Dr. Smith's September 14, 2009 medical source statement (R. 356-62), indicating that Claimant could not perform sedentary work, but found it inconsistent with Dr. Smith's own treatment records, as well as other evidence in the record, and accorded it little weight (R. 33). Dr. Smith's treatment records, to which the ALJ expressly referred, contradict Dr. Smith's medical source statement and support the ALJ's assessment: March 2007 treatment notes indicate Claimant's chronic low back pain was relatively stable, that Claimant denied depression or anxiety, and that Claimant and Dr. Smith were predominately concerned with Claimant's erectile dysfunction and hypertension (R. 265); April 2007 treatment notes make no mention of Claimant's chronic back pain and, again, only discuss erectile dysfunction and hypertension (R. 269); May 2007 treatment

10

notes indicate Claimant had a flare-up of low back pain while doing yard work and that he used four to five Vicoden per month for treating flare-ups (R. 270); June 2007 treatment notes indicate Claimant was experiencing increased low back and neck pain after being in a bus accident on a school field trip and Dr. Smith ordered MRIs (R. 272-74); however, July 2007 treatment notes indicate that the MRIs were normal, Claimant's pain level had returned to his pre-accident baseline, and Claimant stated that overall he was doing relatively well (R. 275).

Claimant did not see Dr. Smith for approximately ten months until May 2008, when he presented with a flare-up of back and joint pain. (R. 276). Dr. Smith refilled Claimant's Vicoden and Skelaxin prescriptions (R. 277), and Claimant did not return for another six months, when in November 2008, Claimant was involved in another motor vehicle accident. (R. 279). Claimant did not seek treatment at the time of the accident, but later complained of neck, chest, and low back pain, which Dr. Smith diagnosed as cervical and lumbar strain and prescribed ibuprofen, rest, and heat and ice. (R. 279-80). Claimant did not see Dr. Smith again for another ten months until September 2009, when Claimant asked Dr. Smith to fill out a disability form, stating that he had pain 24 hours a day, seven days a week and depression. (R. 281). Dr. Smith refilled Claimant's Vicoden and Ibuprofen prescriptions, provided a trial of Prozac, and sent Claimant for a rheumatology consultation, at Claimant's request. (R. 282-82). Claimant's final visit with Dr. Smith was in December 2009, and treatment notes indicate Claimant had no side effects from the Prozac and was feeling much more upbeat and that Dr. Smith would reconsult rheumatology at Claimant's request. (R. 286-87). Dr. Brothers, a consulting rheumatologist, subsequently examined Claimant and found that Claimant did not suffer from rheumatoid arthritis or any other connective tissue disease. (R. 290-91). Accordingly, there is no support in Dr. Smith's records for the limits suggested in his

11

medical source statement (e.g., that Claimant can sit for no more than an hour or less and stand or walk for fifteen minutes continuously).

Claimant also contends that the ALJ erred by discounting Dr. Smith's opinion on the basis that it conflicted with the opinions of Drs. Brothers and Rapchick. Claimant specifically takes issue with the fact that Dr. Brothers only examined Claimant one time. However, Claimant fails to appreciate that Dr. Brothers conducted a rheumatological consultation at Claimant's request and determined Claimant did not suffer from rheumatoid arthritis and that no further rheumatological work-up was necessary at the time. (R. 30, 290-91). Furthermore, simply because the ALJ gave little weight to Dr. Rapchick's opinion that Claimant had no work related limitations, does not mean that it does not somewhat undermine Dr. Smith's opinion that Claimant was not capable of work.

Finally, Claimant contends that the ALJ erred in failing to contact Dr. Smith to resolve any perceived inconsistencies in the record. However, as this court has recognized, "[t]he regulations clearly state that an ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability." *Parker v. Astrue*, 792 F. Supp. 2d 886, 895 (E.D.N.C. 2011) (citing 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 416.912(e), 416.927(c)(2)). Here, the record was sufficient for the ALJ to make a disability determination without recontacting Dr. Smith.

In sum, the ALJ applied the correct legal standard in assessing Dr. Smith's opinion and the ALJ's decision to accord it little weight is supported by substantial evidence. Therefore, the ALJ did not err in his assessment of Dr. Smith's opinion.

### III. The ALJ's Assessment of Claimant's Credibility

Claimant contends that the ALJ erred by rejecting Claimant's pain testimony. (R. 10-11).

12

Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *See Craig*, 76 F.3d at 593-94. First, as an objective matter, the ALJ must determine whether Claimant has a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Id.*; *see also* S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996). If this threshold question is satisfied, then the ALJ evaluates the actual intensity and persistence of the pain or other symptoms, and the extent to which each affects a claimant's ability to work. *See Craig*, 76 F.3d at 595. The step two inquiry considers "all available evidence," including objective medical evidence (i.e., medical signs and laboratory findings), medical history, a claimant's daily activities, the location, duration, frequency and intensity of symptoms, precipitating and aggravating factors, type, dosage, effectiveness and adverse side effects of any pain medication, treatment, other than medication, for relief of pain or other symptoms and functional restrictions. *Id.*; *see also* 20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3. The ALJ may not discredit a claimant solely because her subjective complaints are not substantiated by objective medical evidence. *See Craig*, 76 F.3d at 595-96. However, neither is the ALJ obligated to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *3.

Here, the ALJ's decision indicates he considered Claimant's subjective complaints associated with his impairments, including severe back, leg, and hip pain and inability to focus. (R. 29). The ALJ also noted Claimant's limited daily activities and lack of social activities. *Id.* The ALJ found that Claimant had medically determinable impairments reasonably capable of causing Claimant's

13

alleged symptoms, but concluded Claimant's statements regarding the limiting effects of his symptoms were not fully credible. (R. 32). In reaching this conclusion, the ALJ noted a number of factors, including that Claimant's degenerative disc disease was corrected by surgery, that he has not sought ongoing medical treatment for his back pain even though there are free medical sources of care available in the community, and the ALJ's own observations regarding Claimant's appearance at the administrative hearing. *Id.*

Claimant first contends that the ALJ erred in considering Claimant's failure to obtain treatment for his back despite his assertion of debilitating pain, because the ALJ failed to establish that there were in fact free facilities at which Claimant could receive proper treatment for his back pain and that Claimant knew of such facilities and failed to avail himself of treatment. An ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to . . . pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits. . . ." S.S.R. 96–7p, 1996 WL 374186, at *8. The inability to afford medical treatment is a sufficient reason for medication noncompliance. *Id.*; *see also Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir.1986) (holding it was improper to consider a disability claimant's failure to seek treatment in determining whether an impairment was severe when the failure was justified by lack of funds). Claimant bears the burden to support his alleged inability to afford treatment with credible evidence. *See Gordon v. Schweiker*, 725 F.2d 231, 237 (4th Cir.1984) ("Social Security Ruling 82–59 states that the claimant must show that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause."). However, "the burden of proof is on the Commissioner to establish unjustified

14

noncompliance by substantial evidence." *Dickens v. Astrue*, No. 5:10–CV–535–BO, 2011 WL 3269422, at *3 (E.D.N.C. July 28, 2011) (citing *Preston v. Heckler*, 769 F.2d 988 (4th Cir.1985)).

Here, the ALJ specifically inquired as to Claimant's access to care. (R. 52-53). Claimant first testified that he could not afford to get treatment for his back pain (R. 42), but in response to further inquiry by the ALJ, Claimant stated that he received treatment and medication from a free clinic for his hypertension and asthma, but was not being treated for his back pain because he did not want to take opioids due to this previous substance abuse issues (R. 42, 53). The record indicates that during the period Claimant contends he could not pay his doctor, he reported spending more than $300 per day on crack cocaine approximately 25 days per month. (R. 294). Further, Dr. Ricci noted in August 2010, subsequent to Claimant's detox treatment, that Claimant reported currently taking Hydrocodone (R. 352), which belies Claimant's alternate reason for not seeking treatment.

Claimant also contends that the ALJ's remaining reasons for discounting Claimant's credibility are legally insufficient, because they solely concern a lack of objective evidence. However, the ALJ's analysis offers several specific reasons for discounting plaintiff's credibility and does not rely solely on a lack of objective evidence (R. 32-33). "[I]t is not within this court's province to second guess the ALJ's well-supported determination." *Worthington v. Astrue*, No. 7:11-CV-00207-FL, 2012 WL 4026067, at *6 (E.D.N.C. Sept. 12, 2012) (citing *Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir.1994)). "Additionally, '[g]reat weight should be given to the hearing examiner's findings where credibility of witnesses is involved.'" *Id.* (citing *Laws*, 368 F.2d at 644). Accordingly, the ALJ did not err in assessing Claimant's credibility.

## IV.  The ALJ's Assessment of Claimant's RFC

Finally, Claimant contends that the ALJ erred by assessing Claimant's RFC before he

assessed Claimant's credibility. Pl.'s Mem. at 12-13. Claimant refers to template language, commonly used in disability determinations, stating that "the claimant's statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible to the extent they are inconsistent with the above functional capacity assessment." (R. 32). Claimant cites non-binding, out-of-circuit case law, *Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012), in support of the proposition that such reasoning is error. This court has rejected Claimant's reading of *Bjornson*, concluding that "it does not stand for the proposition that the use of this template language necessitates remand." *See Mascio*, 2013 WL 3321577, at *3. Accordingly, the ALJ did not err in using the template language.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-21] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] be GRANTED, and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 26th day of August 2013.

Robert B. Jones, Jr.
United States Magistrate Judge