IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:12-CV-260-FL

| | |
|---|---|
| HARVEY HAWLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DE 21, 23).[1] Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., issued a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and that the final decision by defendant be affirmed. Plaintiff timely filed objections to the M&R and the response time has expired. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the recommendation of the magistrate judge.

**BACKGROUND**

Plaintiff filed an application for disability insurance benefits on December 11, 2008, alleging disability beginning July 11, 2003. This application was denied initially and upon reconsideration. A hearing was held on September 29, 2011, before an Administrative Law Judge ("ALJ") who determined that plaintiff was not disabled during the relevant time period in a decision dated October

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin, Acting Commissioner of Social Security, has been named as defendant in this case in place of former Commissioner Michael J. Astrue.

17, 2011. Where the Commissioner previously had awarded partial benefits for the period from July 11, 2003 through May 1, 2006, the ALJ made a disability determination with respect to the time period from May 2, 2006, through September 30, 2011, the date last insured. The appeals council denied plaintiff's request for review on January 3, 2012, and plaintiff filed the instant action on May 11, 2012.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

To assist it in its review of the Commissioner's denial of benefits, the court may "designate a magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C. § 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." Id. § 636(b)(1). Absent a

2

Case 5:12-cv-00260-FL   Document 29   Filed 11/25/13   Page 2 of 14

specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform [his] past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period from May 2, 2006, through September 30, 2011. At step two, the ALJ found that plaintiff had the following severe impairments: degenerative disc disease; a history of lumbar fusion; hypertension; asthma; a major depressive disorder; and a history of polysubstance dependence. However, at step three, the ALJ further determined that these impairments were not severe enough to meet or medically equal one of the impairments in the regulations. Prior to proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform

3

sedentary work with the following postural, environmental, and mental restrictions:

> [He] could sit for 6 hours in an 8-hour day and he could stand and walk a total of 2 hours in an 8-hour day. He could lift/carry and push-pull 10 pounds occasionally and five pounds frequently. He was not able to perform any tasks requiring balancing or climbing. He could stoop, crouch, kneel, and crawl occasionally. He could not perform tasks requiring any exposure to workplace hazards such as unprotected heights or dangerous machinery. He also could not perform any tasks requiring concentrated exposure to respiratory irritants such as dust, fumes, and smoke. He had a decreased ability to concentrate on and attend to work tasks to the extent that he could only do simple, routine, repetitive tasks (i.e. he could apply common sense understanding to carry out instructions furnished in written, oral, or diagrammatic form and deal with problems involving several concrete variables in/from standardized situations). The claimant's stress and anxiety limited him so that he could only deal with coworkers, supervisors, and the public occasionally.

(Tr. 28). In making this assessment, the ALJ found plaintiff's statements about his limitations not fully credible. At step four, the ALJ concluded plaintiff did not have the RFC to perform the requirements of his past relevant work as a truck driver. Nonetheless, at step five, upon considering plaintiff's age, education, work experience and RFC, in addition to the testimony of a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that plaintiff could have performed.

B.    Analysis

Plaintiff raises several objections to the M&R, which the court will address in turn below. Upon *de novo* review of plaintiff's objections, the court concludes that plaintiff's objections should be overruled.

    1.    Hypothetical posed to vocational expert

Plaintiff claims the M&R improperly failed to address his argument that the hypothetical posed to the vocational expert did not mention that plaintiff was having "significant difficulties

4

dealing with stress." (Obj. 1-6). As an initial matter, contrary to plaintiff's suggestion, the magistrate judge expressly addressed whether the hypothetical question posed to the vocational expert sufficiently accounted for plaintiff's "difficulties dealing with stress." (M&R 9). Under the applicable standard, the magistrate judge correctly determined that the hypothetical posed was sufficient.

"In order for a vocational expert's opinion to be relevant or helpful, . . . it must be in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989). "[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence." Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) (quoting Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir.2005)). Accordingly, this court has recognized that an ALJ "need only pose those hypothetical questions that are based on substantial evidence and accurately reflect the plaintiff's limitations" as determined by the ALJ. Cannady v. Colvin, 5:11-CV-112-FL, 2013 WL 655134 *2 (E.D.N.C. Feb. 22, 2013) (citations omitted); see also Mickles v. Shalala, 29 F.3d 918, 929 n. 7 (4th Cir. 1994) (Luttig, J. Concurring) (finding no error in hypothetical posed where "all of the exertional and non-exertional limitations which the ALJ found to exist, were included in the hypothetical").

In this case, the ALJ posed a hypothetical to the vocational expert that accurately reflected plaintiff's residual functional capacity as determined by the ALJ. In pertinent part, in his RFC determination, the ALJ determined that "[t]he claimant's stress and anxiety limited [plaintiff] so that he could only deal with coworkers, supervisors, and the public occasionally." (Tr. 28). The hypothetical posed to the vocational expert assumed that "socially the individual would be limited

5

to occasional contact with coworkers, supervisors, and the public." (Tr. 55). Accordingly, where the ALJ's hypothetical included the pertinent non-exertional limitations that the ALJ previously found to exist in his RFC determination, the ALJ did not err in relying on the vocational expert's opinion in making his determination as to disability.

The case cited by plaintiff in support of his argument, <u>Riley v. Chater</u>, No. 94-1797, 1995 WL 361483 *3 (4th Cir. June 16, 1995), is inapposite. There, the "ALJ specifically found that Claimant suffered from 'depression,' 'moderate difficulties in maintaining social functioning,' 'borderline intellectual functioning,' and that he has 'moderate restriction of activities of daily living.'" <u>Id.</u> "However, the ALJ did not determine how or if these impairments specifically affected Claimant's ability to work, [nor] . . . include these limitations, even by name, in his hypothetical questions to the VE." <u>Id.</u> Here, by contrast, the ALJ did include the limitations which he found in his RFC determination in the hypothetical posed to the VE. Accordingly, in contrast to the hypothetical in <u>Riley</u>, which merely "asked the expert to assume that Claimant could do 'light work,'" the hypothetical in this case was correct.

Based on the foregoing, plaintiff's objection with respect to the M&R's treatment of his argument regarding the hypothetical posed must be overruled.

2. Treating physician

Plaintiff argues that the M&R failed to adequately address his argument that the ALJ failed to give sufficient reasons for giving less than controlling weight to the opinion of Dr. Smith, plaintiff's treating physician. (Obj. 6-7). Plaintiff contends that merely stating that the treating physician's opinion was "not consistent with his own treatment records," is not a sufficient

6

explanation for discounting the treating physician's opinion. (Obj. 6).

The Fourth Circuit has stated, however, that treating source opinions are entitled to controlling weight if they are "well supported by medically acceptable *clinical and laboratory diagnostic techniques* and . . . *not inconsistent with the other substantial evidence* in the case record." Craig, 76 F.3d at 590 (emphasis in original) (quoting 20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2)). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. A treating physician's opinion may be rejected, for example, where the physician's "own medical notes did not confirm his determination of 'disability.'" Id.

Accordingly, the ALJ's statement that Dr. Smith's opinion was not supported by his own treatment notes was a sufficient reason in itself for discounting the treating physician's opinion. This determination was supported by substantial evidence in the record as summarized in the M&R, which the court incorporates herein. (M&R 10-12). In this manner, the ALJ's decision "contain[ed] specific reasons for the weight given to the treating source's medical opinion, supported by substantial evidence in the case record" sufficient to make clear to this court the reasons for weight given the opinion. SSR 96-2p, 1996 WL 374188 at *5 (July 2, 1996). While plaintiff faults the ALJ for not indicating where the treating physician's notes contradicted his opinion, a point-by-point articulation of each inconsistency is not required for the court to understand the ALJ's reasons for weight given the opinion. In any event, the ALJ's decision includes a detailed discussion of Dr. Smith's treatment of plaintiff, describing a treatment record inconsistent with Dr. Smith's opinion that he could not perform any work on a full-time basis, including significant gaps in treatment and

7

variations in type and intensity of treatment received over time. (Tr. 30).

Moreover, the ALJ did not only rely on inconsistency with treatment records in discounting the opinion of Dr. Smith. The ALJ also explained that Dr. Smith's opinion was "contradicted by the other evidence in the record including the examinations by Drs. Brothers and Rapchick." (Tr. 33). This determination also was supported by substantial evidence, where Dr. Brothers determined upon referral from Dr. Smith that plaintiff had no joint tenderness or swelling, had full range of motion of his joints, and did not have arthritis, (Tr. 290-91), and where Dr. Rapchick determined on consultative examination that plaintiff was "able to sit, stand and move about, and lift , carry and handle objects, as well as hear, speak and travel without significant difficulty." (Tr. 349).

In sum, the ALJ sufficiently set forth reasons for giving little weight to the treating physician's opinion, and these reasons were supported by substantial evidence in the record. Therefore, the court must overrule this objection.

3. Duty to re-contact physician

Plaintiff argues that the ALJ erred in failing to re-contact his treating physician, Dr. Smith, where there was a conflict between Dr. Smith's opinion and Dr. Smith's treatment records. Plaintiff contends the M&R mistakenly relied upon the rule of law as stated in Parker v. Astrue, where this court noted: "The regulations clearly state that an ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability." Parker v. Astrue, 792 F.Supp.2d 886, 895 (E.D.N.C. 2011) (citing 20 C.F.R. §§ 404.1512(e), 404.1527(c)(2), 416.912(e), 416.927(c)(2)). Plaintiff states that this rule of law does not accurately reflect what is stated in the regulations, particularly 20 C.F.R. § 404.1512(e)(1).

8

At the time of the ALJ's decision in 2011, § 404.1512(e)(1) stated:

> We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. . . .

20 C.F.R. § 404.1512(e)(1) (2011). At the same time, the regulations also stated that

> If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all of the evidence and *see whether we can decide whether you are disabled based on the evidence we have*.
>
> If the evidence is consistent but we do not have sufficient evidence to decide whether you are disabled, or *if after weighing the evidence we decide we cannot reach a conclusion about whether you are disabled*, we will try to obtain additional evidence under the provisions of §§ 404.1512 . . . . We will request additional existing records, [or] recontact your treating sources or any other examining sources . . . ,

20 C.F.R. § 404.1527(c)(2) (2011) (emphasis added); § 416.927(c)(2) (2011) (same). In light of the emphasized text in § 404.1527, and reading the regulations together, this court in Parker accurately stated the standard for when the ALJ must recontact a treating physician. Applying that standard in the present case, the M&R correctly determined that the ALJ did not have a duty to recontact Dr. Smith.

Presently, § 404.1512(e), and § 404.1527(c), contain different language from the regulations in place in 2011. The current version of § 404.1512(e) no longer includes the language quoted above, but rather concerns consultative examinations:

> Generally, we will not request a consultative examination until we have made every reasonable effort to obtain evidence from your own medical sources. However, in some instances, such as when a source is known to be unable to provide certain tests

9

or procedures or is known to be nonproductive or uncooperative, we may order a consultative examination while awaiting receipt of medical source evidence. We will not evaluate this evidence until we have made every reasonable effort to obtain evidence from your medical sources.

20 C.F.R. § 404.1512(e) (2012). Section 404.1527(c)(2) also has changed, and it no longer includes language quoted above, but rather states in pertinent part:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (2012). The original language in § 404.1527(c)(2) has since been recodified in substantially similar form at § 416.920b:

> If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have.
>
> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. [Among other actions] . . . [w]e may recontact your treating physician, psychologist, or other medical source.

20 C.F.R. § 416.920b(b)-(c) (2012). These regulations in their present iteration also do not support plaintiff's argument that the ALJ had a duty to recontact Dr. Smith. Indeed, the recodification of the most pertinent language from § 404.1527(c)(2) into § 416.920b reconfirms that the rule stated in Parker is correct. To reiterate, the regulations in past and current form clearly state that the ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability. Under this standard, ALJ in the present case followed correct procedures in giving less weight to Dr. Smith's opinion where it was inconsistent with other

10

substantial evidence in the case record. No need to recontact Dr. Smith arose where the evidence in the record was sufficient for the ALJ to make a disability determination.

   4.  ALJ's credibility determination

Plaintiff objects to the M&R's analysis of the credibility determination by the ALJ. First, plaintiff argues that the M&R misstated the standard for evaluating pain at step one under Craig, 76 F.3d at 595. (Obj. 9). Second, plaintiff argues that the M&R improperly employed its own reasoning regarding the justification for plaintiff's failure to seek treatment from free medical care providers in the community. (Id. 10). Upon *de novo* review, the court finds no error in the ALJ's credibility determination.

With respect to the standard set forth in Craig, the ALJ first must determine whether there is objective medical evidence showing plaintiff has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged." 76 F.3d at 595 (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)). If this threshold requirement is satisfied, then the ALJ " must evaluate the intensity, persistence, and limiting effects of the [plaintiff's] symptoms." SSR 96-7p. If the medical record does not substantiate plaintiff's statements regarding the extent of pain, then the ALJ must make a credibility determination of plaintiff's statements based on consideration of the entire case record, including medical records, medical opinions, and plaintiff's statements. Id.; see also 20 C.F.R. §§ 404.1529(c) and 416.929(c). The ALJ must delineate specific reasons for the credibility determination. Id. A plaintiff's allegations of pain and other symptoms

> may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, [but] they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can

11

reasonably be expected to cause the pain the [plaintiff] alleges [he] suffers.

Craig, 76 F.3d at 595.

Here, the ALJ first found that plaintiff had medically determinable impairments which reasonably could be expected to cause the alleged symptoms. (Tr. 32). This was a correct application of the first step of the Craig standard. At the second step, the ALJ found that plaintiff's statements as to the intensity, persistence, and limiting effects of his pain were not fully credible to the extent they are inconsistent with the ALJ's RFC assessment. (Id.) For the reasons stated below, this determination properly was explained by the ALJ and was supported by substantial evidence in the record.

In particular, the ALJ noted several aspects of the record in support of his credibility determination:

> The claimant's degenerative disc disease was corrected by surgery. he has continued to complain of back pain but he has not sought ongoing medical treatment for this even though there are sources of free medical care available in the community. Physical examinations have revealed that the claimant has tenderness of the spinal muscles but he does not have severe limitation of motion of the spine or any neurological abnormalities indicative of nerve root compression. He has normal reflex, motor, and sensory findings and he has not [sic] abnormalities in his posture and gait.

(Tr. 32). Plaintiff takes issue with one of the above reasons noted by the ALJ, particularly the ALJ's finding that plaintiff "has not sought ongoing medical treatment for this [back pain] even though there are sources of free medical care available in the community." (Id.).

In this case, plaintiff testified that he was seeking free medical treatment at a medical clinic called "CAARE Free Clinic." (See Tr. 52; 363-365). He testified that he goes to the free clinic twice a week for counseling and for medical treatment "for hypertension and asthma," but not for

12

his back pain. (Tr. 53). Indeed the record contains medical treatment notes and laboratory results generated at the CAARE Free Clinic, and those notes show treatment for medical conditions but not for back pain. (Tr. 363-365). Further, plaintiff testified that he stopped taking pain medications, other than Ibuprofen, because when he first sought treatment at the CAARE Free Clinic he was "drinking and taking pain killers" and he did not "want that." (Tr. 53). He testified, "I got addicted to the pain medicine." (Id.).

While plaintiff suggests that the ALJ erred by making no finding that plaintiff's reason for stopping pain medications was "bogus" or "unjustifiable," (Obj. 10), this is beside the point. Where substantial evidence showed that plaintiff sought medical treatment at the free clinic for certain medical problems but not for allegedly disabling back pain, the ALJ did not err in considering this fact in evaluating the credibility of plaintiff's allegations concerning the intensity, persistence, and limiting effects of his pain symptoms.

In sum, substantial evidence supports the ALJ's determination that plaintiff "has not sought ongoing medical treatment for this [back pain] even though there are sources of free medical care available in the community." (Tr. 32). In turn, along with the other aspects of the record cited by the ALJ, this finding supported a determination that plaintiff's statements concerning the intensity, persistence, and limiting effects of his pain symptoms are not credible to the extent inconsistent with the ALJ's RFC determination. Accordingly, the ALJ did not err in evaluating plaintiff's credibility and plaintiff's objection as to this issue must be overruled.

# CONCLUSION

Upon *de novo* review of those portions of the M&R to which specific objections have been filed, and upon considered review of those portions of the M&R to which no such objection has been made, the court ADOPTS the recommendation of the magistrate judge, DENIES plaintiff's motion for judgment on the pleadings (DE 21), GRANTS defendant's motion for judgment on the pleadings (DE 23), and AFFIRMS the final decision by defendant. The clerk is DIRECTED to close this case.

SO ORDERED this the 25th day of November, 2013.

*/s/ Louise W. Flanagan*
_____
LOUISE W. FLANAGAN
United States District Judge

14

Case 5:12-cv-00260-FL   Document 29   Filed 11/25/13   Page 14 of 14